**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD, as Liquidating Agent of Southwest Corporate Federal Credit Union and Members United Corporate Federal Credit Union, | ) ) ) ) ) Case No. 13-cv-6726 (DLC) |
| Plaintiff, | ) ) **ECF Case** |
| v. | ) ) **Electronically Filed** |
| RBS SECURITIES INC., f/k/a GREENWICH CAPITAL MARKETS, INC. and RBS ACCEPTANCE INC., f/k/a GREENWICH CAPITAL ACCEPTANCE, INC., | ) ) ) ) ) ) |
| Defendants. | ) ) |

## PLAINTIFF NCUA'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT RBS'S
## MOTION FOR JUDGMENT ON THE PLEADINGS

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ..............................................................................................................1

BACKGROUND ...............................................................................................................2

STANDARD OF REVIEW ..................................................................................................3

ARGUMENT ...................................................................................................................3

    I.      Reliance Is Not an Element Under § 12(G) .........................................................3

    II.     Even if § 12(G) Requires Reliance, NCUA's Complaint Is Sufficient .........................8

    III.    In the Alternative, NCUA Should Be Given Leave To Amend...................................10

CONCLUSION ...............................................................................................................11

# TABLE OF AUTHORITIES

Page

## CASES

*Aaron v. SEC*, 446 U.S. 680 (1980) ........................................................................................6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................3

*Benjamin v. Cablevision Programming Invs.*, 499 N.E.2d 1309 (Ill. 1986) ........................5

*Commissioner v. Estate of Bosch*, 387 U.S. 456 (1967) ........................................................6

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189 (2d Cir. 2003) ..............................8

*FHFA v. Bank of America Corp.*, No. 11-cv-6195 (DLC), 2014 WL 7232339
  (S.D.N.Y. Dec. 18, 2014) ......................................................................................................5

*Finkel v. Stratton Corp.*, 962 F.2d 169 (2d Cir. 1992) ..........................................................5

*Foster v. Alex*, 572 N.E.2d 1242 (Ill. App. Ct. 1991) ..................................................... 5, 6, 7

*Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, No. 13-cv-8997 (JPO)(GWG),
  2014 WL 6886010 (S.D.N.Y. Dec. 8, 2014) .....................................................................10

*Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995) ........................................................................5

*Hofner v. Glenn Ingram & Co.*, 489 N.E.2d 311 (Ill. App. Ct. 1985) ...................................8

*Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229 (2d Cir. 2007) ..................................10

*Kirkendall v. Halliburton, Inc.*, 707 F.3d 173 (2d Cir. 2013) ..............................................3

*LeFaro v. New York Cardiothoracic Grp.*, 570 F.3d 471 (2d Cir. 2009) ............................3, 9

*Lucas v. Downtown Greenville Invs. Ltd. P'ship*, 671 N.E.2d 389 (Ill. App. Ct. 1996) ..............................6, 7

*Metromedia Co. v. Fugazy*, 983 F.2d 350 (2d Cir.1992) .......................................................7

*N. Sims Organ & Co. v. SEC*, 293 F.2d 78 (2d Cir. 1961) .....................................................4

*NCUA v. Morgan Stanley & Co.*, No. 13-cv-6705 (DLC), 2014 WL 1673351 (S.D.N.Y.
  Apr. 28, 2014) ............................................................................................................. 4, 5, 7

*Parker v. Columbia Pictures Indus.*, 204 F.3d 326 (2d Cir. 2000) ......................................10

*People v. Whitlow*, 433 N.E.2d 629 (Ill. 1982) ...................................................................4, 6

*PNC Bank, Nat'l Ass'n v. Wolters Kluwer Fin. Servs., Inc.*, --- F. Supp. 3d. ---,
  No. 12-cv-8570 (PAE), 2014 WL 7146357 (S.D.N.Y. Dec. 15, 2014) ..............................11

*Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126 (2d Cir. 2007) ..........................6

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) ............................................................5

*Sanders v. John Nuveen & Co.*, 619 F.2d 1222 (7th Cir. 1980) .....................................3

*SEC v. Fife*, 311 F.3d 1 (1st Cir. 2002) ..........................................................................4

*Shailja Gandhi Revocable Trust v. Sitara Capital Mgmt., LLC*, No. 09-cv-3141,
    2011 WL 814647 (N.D. Ill. Feb. 25, 2011) .............................................................9, 10

*Thelen LLP, In re*, 736 F.3d 213 (2d Cir. 2013) ............................................................4

*Tirapelli v. Advanced Equities, Inc.*, 813 N.E.2d 1138 (Ill. App. Ct. 2004) ...............6, 7

*United States v. Adame-Orozco*, 607 F.3d 647 (10th Cir. 2010) ...................................5

*United States v. Ashdown*, 509 F.2d 793 (5th Cir. 1975) ...............................................4

*United States v. Naftalin*, 441 U.S. 768 (1979) ..............................................................5

*WorldCom, Inc. Sec. Litig., In re*, 346 F. Supp. 2d 628 (S.D.N.Y. 2004) .......................7

## STATUTES, REGULATIONS, AND RULES

Securities Act of 1933, 15 U.S.C. § 77a *et seq.* .................................................1, 2, 3, 4, 5

    § 11, 15 U.S.C. § 77k ..............................................................................................2

    § 12, 15 U.S.C. § 77*l* ...........................................................................................4, 5

    § 12(a)(2), 15 U.S.C. § 77*l*(a)(2) ........................................................................2, 3, 7

    § 17, 15 U.S.C. § 77q ...........................................................................................1, 4, 5

    § 17(a), 15 U.S.C. § 77q(a) .................................................................................5, 6, 7, 8

    § 17(a)(2), 15 U.S.C. § 77q(a)(2) ........................................................................5, 6, 7

Illinois Securities Law of 1953, 815 ILCS 5/1 *et seq.* .........................................1, 2, 3

    § 12(F), 815 ILCS 5/12(F) .......................................................................................7

    § 12(G), 815 ILCS 5/12(G) ........................................................1, 2, 3, 4, 5, 6, 7, 8, 10, 11

    § 12(H), 815 ILCS 5/12(H) .......................................................................................7

§ 12(I), 815 ILCS 5/12(I) ................................................................................................7

§ 13(A), 815 ILCS 5/13(A) ..............................................................................................5

17 C.F.R.:

§ 230.159A(b)(1)(i) ..........................................................................................................3

§ 240.10b-5 (Rule 10b-5) ................................................................................................7

Fed. R. Civ. P.:

Rule 8 ................................................................................................................... 1, 9, 10

Rule 9(b) ........................................................................................................................10

Rule 12(c) ............................................................................................................ 3, 9, 11

Rule 16(b)(4) ..................................................................................................................10


LEGISLATIVE MATERIALS

S. Rep. No. 73-47 (1933) .................................................................................................5


OTHER MATERIALS

Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527 (1947) ............................5

5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* (3d ed. 2004) ........................3

Samuel H. Young, *Interpretive Comments and Notes on Sections of the Securities Law of 1953 as Amended*, S.H.A. Ch. 121 1/2 (1960) ............................................................4

# INTRODUCTION

NCUA has properly pleaded claims under the Illinois Securities Law of 1953.  After NCUA filed complaints in September 2013, litigated motions to dismiss, and then filed amended complaints in November 2014, RBS now argues for the first time that NCUA failed to plead reliance under the Illinois Securities Law, and contends that that purported failure results in dismissal of those claims with prejudice.  No other Defendant joins RBS in making this remarkable argument.

*First*, as a matter of law, reliance is not an element of a claim under § 12(G) of the Illinois Securities Law.  The Illinois Supreme Court has instructed that § 12(G) is to be construed in accordance with § 17 of the Securities Act of 1933, on which it was based.  It is settled law that reliance is unnecessary to state or prove a violation of § 17.

*Second*, even if reliance is an element of § 12(G), NCUA has sufficiently pleaded it.  Both NCUA's original and recently amended complaints alleged that Members United (the Credit Union at issue) "would not have purchased the certificates" if it "had known about the Originators' pervasive disregard of underwriting standards – contrary to the representations in the Offering Documents."  Compl. ¶ 48, ECF 1 (Sept. 23, 2013); First Am. Compl. ¶ 48, ECF 167 (Nov. 14, 2014).  That allegation, which RBS does not acknowledge or address, is sufficient to satisfy the notice pleading standard of Rule 8.

*Third*, if the Court finds it necessary, NCUA can amend again to add more detailed allegations of reliance.  There is good cause to permit NCUA to do so:  NCUA had no reason to add detailed allegations of reliance to its complaint in its last round of amendments (in November 2014) because no Defendant – including RBS – had raised the issue despite repeated opportunities over more than a year since the filing of the original complaints in September 2013.  RBS would suffer no prejudice from such minor amendments: it has been fully on notice of NCUA's claims for quite some time.  NCUA went so far as to provide RBS with redlined versions of its amended

complaint before NCUA filed it last November – precisely so RBS could raise any concerns about the complaint at that time.  RBS never suggested any issue with the allegations involving § 12(G). Especially in view of these circumstances, RBS should not be permitted to benefit from its apparent strategy of waiting until after the deadline for amendments had passed before raising this argument.

## BACKGROUND

On September 23, 2013, NCUA filed a Complaint on behalf of Members United Corporate Federal Credit Union ("Members United"), seeking relief for RBS's violations of §§ 11 and 12(a)(2) of the Securities Act of 1933 and of § 12(G) of the Illinois Securities Law.  Compl. ¶¶ 359-410, ECF 1.  NCUA simultaneously brought claims under § 12(G) against most other Defendants in the coordinated actions before this Court.  Neither RBS nor any other Defendant moved to dismiss NCUA's § 12(G) claim for failure to plead reliance.

In October 2014, at RBS's request, the Courts set November 14, 2014, as the deadline to amend pleadings.  *NCUA v. Morgan Stanley & Co.*, No. 13-cv-6705, ECF 204, at 3 (S.D.N.Y. Oct. 3, 2014).  More than a week before this deadline, NCUA provided RBS with "redlined versions" of its complaints.  Nov. 6, 2014 Email from G. Giardina to RBS counsel (Ex. A).  If RBS did not consent "to any portion" of its First Amended Complaint, NCUA specifically requested that RBS "indicate the basis of [its] objection so that we may consider, and hopefully discuss, them before our filing is due."  *Id.*  RBS raised no objection to NCUA's § 12(G) claims in response to this request.  It also did not move to dismiss NCUA's complaint in this Court for lack of reliance (or for any other reason). On December 15, RBS answered NCUA's complaint.

On February 20, 2015, RBS filed a motion for judgment on the pleadings, arguing for the first time that NCUA was required to plead reliance to support its § 12(G) claims.  No other Defendant has made any similar argument in support of any motion.

## STANDARD OF REVIEW

Courts considering motions for judgment on the pleadings under Rule 12(c) "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LeFaro v. New York Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009) (internal quotation marks omitted). Dismissal is inappropriate if the complaint "contain[s] sufficient factual matter to state a claim to relief that is plausible on its face." *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 178-79 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). "[H]asty or imprudent use of this summary procedure by the courts violates the policy in favor of ensuring to each litigant a full and fair hearing on the merits of his or her claim or defense." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1368, at 222-23 (3d ed. 2004).

## ARGUMENT

### I. Reliance Is Not an Element Under § 12(G)

RBS's motion should be denied because it rests on the false premise that NCUA had to plead reliance under § 12(G) of the Illinois Securities Law. The text of § 12(G) contains no such requirement:

> It shall be a violation of the provisions of this Act for any person: . . . to obtain money or property through the sale of securities by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

815 ILCS 5/12(G). The phrase "by means of" does not imply reliance. *See Sanders v. John Nuveen & Co.*, 619 F.2d 1222, 1225-26 (7th Cir. 1980) (explaining the import of such language in the context of § 12(a)(2) of the Securities Act of 1933). To the contrary, as the Securities and Exchange Commission has clarified in the analogous federal context, to sell a security "by means of" a communication is simply to use or refer to the communication when selling the security.[1]

---

[1]    *See* 17 C.F.R. § 230.159A(b)(1)(i) (an underwriter "offer[s] or sell[s] securities . . . by means of" a free writing prospectus if the underwriter "used or referred to the free writing prospectus in offering or selling the securities to the purchaser").

The Illinois Supreme Court has not directly considered whether reliance is an element of a violation of § 12(G). "It is the duty of this Court in such circumstances to predict how that court would construe [§ 12(G)]." *NCUA v. Morgan Stanley & Co.*, No. 13 Civ. 6705 (DLC), 2014 WL 1673351, at *3 (S.D.N.Y. Apr. 28, 2014) (citing *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013)).

In making that prediction, this Court should follow the Illinois Supreme Court's guidance to look to federal courts' interpretations of § 17 of the Securities Act of 1933, 15 U.S.C. § 77q, when interpreting § 12. *See People v. Whitlow*, 433 N.E.2d 629, 634-35 (Ill. 1982) (considering whether *scienter* is an element under various provisions of § 12); *see* Samuel H. Young, *Interpretive Comments and Notes on Sections of the Securities Law of 1953 as Amended*, S.H.A. Ch. 121 1/2, App'x at 629 (1960) (noting that § 12(G) was based on § 17).[2] Consistent with that guidance, this Court has already observed that § 12(G) was "[p]lainly . . . modelled directly off Section 17(a)(2) of the Securities Act." *Morgan Stanley*, 2014 WL 1673351, at *5-6. Federal cases interpreting § 17(a)(2) thus are highly pertinent to predicting how the Illinois Supreme Court will interpret § 12(G).

Those cases make clear that reliance is *not* required to establish a violation of § 17(a)(2). *See N. Sims Organ & Co. v. SEC*, 293 F.2d 78, 80 n.3 (2d Cir. 1961) (citing § 17(a) and agreeing with the SEC that "reliance is not an element of the violation charged"); *see also SEC v. Fife*, 311 F.3d 1, 9 (1st Cir. 2002) ("Under section 17(a) of the Securities Act, specific reliance by the investor need not be shown.") (internal quotation marks and brackets omitted); *United States v. Ashdown*, 509 F.2d 793, 799 (5th Cir. 1975); *accord Morgan Stanley*, 2014 WL 1673351, at *6 ("[W]hile Sections 17(a)(1) and 17(a)(3) sound in fraud, Section 17(a)(2) is written as a strict liability offense.").[3] That is because the

---

[2] This Court has previously recognized that Young's *Comments and Notes* is "the definitive treatise of the Illinois Securities Act of 1953, which is the foundation for the modern Illinois Blue Sky Law." *Morgan Stanley*, 2014 WL 1673351, at *5.

[3] The federal cases cited above as directly interpreting § 17 are enforcement actions by the United States or the SEC, but are nonetheless the appropriate guide by which to interpret § 12(G) under *Whitlow*. Most courts to consider the issue, including the Second Circuit, have held that there

Securities Act sought not only to "[p]revent[] . . . frauds against investors" but also "to achieve a high standard of business ethics" and "'to prevent further exploitation of the public by the sale of unsound, fraudulent, and worthless securities through misrepresentation.'" *United States v. Naftalin*, 441 U.S. 768, 775 (1979) (quoting S. Rep. No. 73-47, at 1 (1933)) (internal quotation marks omitted in part).  By adopting such closely parallel language to § 17(a)(2), the Illinois legislature meant to pursue those same purposes.  *See Morgan Stanley*, 2014 WL 1673351, at *6 (holding that § 12(G) "is to be applied 'liberal[ly]' to effect its 'paternalistic' purpose of protecting the public") (quoting *Benjamin v. Cablevision Programming Invs.*, 499 N.E.2d 1309, 1315 (Ill. 1986)) (brackets in original); *see generally United States v. Adame-Orozco*, 607 F.3d 647, 654 (10th Cir. 2010) ("When, as here, a statute 'is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it.'") (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537 (1947)).

In addition, as this Court has already observed, § 17(a)(2) itself is "analogous to the pre-1995 version of Section 12 of the [federal] Securities Act" and "should be read *in pari materia* with" that section.  *Morgan Stanley*, 2014 WL 1673351, at *6.  It is, if anything, even more firmly settled for § 12 than for § 17(a) that the federal statute "grant[s] buyers" of securities "a right to rescind without proof of reliance."  *Gustafson v. Alloyd Co.*, 513 U.S. 561, 576 (1995); *see also Rombach v. Chang*, 355 F.3d 164, 169 n.4 (2d Cir. 2004) ("Neither Section 11 nor Section 12(a)(2) requires that plaintiffs allege the scienter or reliance elements of a fraud cause of action."); *FHFA v. Bank of America Corp.*, No. 11-cv-6195 (DLC), 2014 WL 7232339, at *2 (S.D.N.Y. Dec. 18, 2014) (Cote, J.) ("This Court

---

is no implied private cause of action under § 17.  *See, e.g.*, *Finkel v. Stratton Corp.*, 962 F.2d 169, 175 (2d Cir. 1992) (collecting cases).  The Illinois statute, however, provides an express private cause of action that extends to "[e]very sale of a security made in violation of the provisions of this Act." 815 ILCS 5/13(A).  Under the plain language of that provision, because reliance is not required for the State of Illinois to prove a violation of § 12(G) (as both the text and the analogy to § 17(a)(2) demonstrate), it is also unnecessary for any private plaintiff to prove reliance in order to recover.

has repeatedly emphasized that neither Section 11 nor Section 12(a)(2) 'requires allegations of scienter, *reliance*, or loss causation in order to state a claim.'").

RBS ignores the statutory text and the Illinois Supreme Court's guidance to look to federal courts' interpretations of parallel federal law.  It instead contends merely (at 4-5) that three erroneous decisions of Illinois intermediate appellate courts have settled the issue.  Although decisions of the intermediate appellate courts "are helpful indicators" of how the Illinois Supreme Court would interpret § 12(G), this Court is "not strictly bound" by those decisions.  *Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 133 (2d Cir. 2007) (internal quotation marks omitted).  Where, as here, "the highest court of the State has not spoken on the point," the "decrees of lower state courts" are "not controlling."  *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465 (1967) (internal quotation marks omitted).  RBS's conclusive reliance on Illinois intermediate appellate opinions is therefore misplaced.  In any event, those decisions do not help RBS.  Two of those three cases – *Foster v. Alex*, 572 N.E.2d 1242 (Ill. App. Ct. 1991), and *Lucas v. Downtown Greenville Investors Limited Partnership*, 671 N.E.2d 389 (Ill. App. Ct. 1996) – plainly erred in their analyses of § 12(G).  The third, *Tirapelli v. Advanced Equities, Inc.*, 813 N.E.2d 1138 (Ill. App. Ct. 2004), did not conduct any independent analysis at all.

*Foster* is internally inconsistent – so much so that it provides no useful guidance to this Court.  That case addressed both the question whether § 12(G) requires proof of *scienter* and the question whether it requires proof of reliance.  As to the *scienter* issue, *Foster* acknowledged the holding of *Whitlow* that § 12(G) should be construed in harmony with § 17(a)(2) and followed federal authority holding that "[*s*]*cienter* is not required in a civil case brought under" § 17(a)(2).  *See* 572 N.E.2d at 1244-45 (citing *Aaron v.* SEC, 446 U.S. 680, 697 (1980)).  As to the reliance issue, however, *Foster* abandoned this approach without explanation and drew an analogy not to § 17(a)(2) but to common-law negligent misrepresentation.  *Id.* at 1245.  There is no reason to think that the Illinois

Supreme Court would adopt such an internally inconsistent approach to interpreting § 12(G) – and one that deviates without explanation from its direction to refer to § 17(a)(2).

*Lucas* suffers from similarly deficient reasoning on this point. That case involved multiple claims under §§ 12(F), (G), (H), and (I). *See* 671 N.E.2d at 42-43. The court correctly noted that "sections 12(F) and (G) of the Act are patterned after sections 17(a)(2) and (a)(3) of the Securities Act" and that "Illinois courts must therefore look to federal case law when interpreting these provisions." *Id.* at 45. It incorrectly stated, however, that the text of the statute (which it merely recited without analysis) and federal case law required a plaintiff to prove "transaction causation," which it defined as a showing that the "alleged misconduct induced the plaintiff to purchase the security." *Id.* at 50.[4] As already discussed, federal law does *not* require such a showing for a claim under § 17(a)(2). *See supra* pp. 4-6.[5] The *Lucas* court appears to have been led into error by the plaintiffs in that case, who incorrectly conceded that they were required to prove transaction causation in the sense the *Lucas* court used that term. *See* 671 N.E.2d at 50.

Finally, *Tirapelli* carries no independent weight. That decision contains no original analysis of the reliance question at all. It merely cites *Foster* for the proposition that "reasonable reliance is an element of sections 12(F), 12(G), and 12(I) of the Illinois Securities Law," 813 N.E.2d at 1142, and is therefore equally unpersuasive.

---

[4]   As this Court noted in *In re WorldCom, Inc. Securities Litigation*, 346 F. Supp. 2d 628 (S.D.N.Y. 2004) (Cote, J.), § 12(a)(2) claims do require a "plaintiff [to] show 'some causal connection between the alleged communication and the sale, even if not decisive.'" *Id.* at 659 (quoting *Metromedia Co. v. Fugazy*, 983 F.2d 350, 361 (2d Cir.1992)). Such a lesser degree of causal connection is different from and does not equate to reliance. *See id.* Assuming that such a requirement also applies to claims under § 12(G), NCUA does not understand RBS's motion to be asserting that NCUA has not properly alleged that degree of connection. In light of the allegations discussed in Part II, *infra*, any such assertion would be clearly meritless.

[5]   To the extent that *Lucas* discussed federal cases about transaction causation, it cited cases involving the private cause of action under Rule 10b-5, 17 C.F.R. § 240.10b-5. As this Court has already concluded, § 12(G) claims are not analogous to Rule 10b-5 claims. *See Morgan Stanley*, 2014 WL 1673351, at *6.

In sum, the intermediate appellate cases on which RBS relies misread the text of the statute, misconstrued the elements of its federal analogue, and overlooked clear guidance from the Illinois Supreme Court.  This Court can and should decline to follow them as neither binding nor persuasive.  Because the text of § 12(G) contains no reliance requirement, because the Illinois Supreme Court has stated that § 12(G) should be construed by reference to § 17(a), and because § 17(a) does not require reliance, the Illinois Supreme Court would likely conclude that § 12(G) similarly does not require reliance.  NCUA thus did not have to plead reliance to state a § 12(G) claim, and RBS's motion should be denied.

## II.   Even if § 12(G) Requires Reliance, NCUA's Complaint Is Sufficient

Regardless of whether reliance is a necessary element of a § 12(G) claim, NCUA has (out of an abundance of caution) pleaded facts sufficient to establish reliance.  Reliance in a securities case "is established simply by showing that, but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction."  *Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp.*, 343 F.3d 189, 197 (2d Cir. 2003); *see also Hofner v. Glenn Ingram & Co.*, 489 N.E.2d 311, 318 (Ill. App. Ct. 1985) (finding reliance sufficiently pleaded "[a]fter a fair reading of plaintiff's complaint, with all reasonable inferences derived therefrom," where plaintiff pleaded that he would have resigned from his employment had he known that his employer's financial situation and his compensation were contrary to employer's representations).

Here, Paragraph 48 of both NCUA's original Complaint and its First Amended Complaint alleged that:

> At the time of purchase, the Credit Unions were not aware of the untrue statements or omissions of material facts in the Offering Documents of the RMBS.  If the Credit Unions had known about the Originators' pervasive disregard of underwriting standards—contrary to the representations in the Offering Documents—they would not have purchased the certificates.

Compl. ¶ 48, ECF 1 (Sept. 23, 2013); First Am. Compl. ¶ 48, ECF 167 (Nov. 14, 2014).  Paragraphs

406 and 407 of both Complaints reiterated these allegations specifically as to Members United and

§ 12(G).  Compl. ¶¶ 406-407; First Am. Compl. ¶¶ 406-407.  Notably, RBS does not mention those

allegations in its motion, much less explain why they are insufficient under the generous notice

pleading standard of Rule 8.

The plausibility of NCUA's reliance allegations is reinforced by other allegations throughout

the First Amended Complaint explaining the importance of misstated and omitted information to

decisions made by RMBS investors.  *See* First Am. Compl. ¶ 35 (alleging that the risk-shifting inherent

in securitization makes "adherence to mortgage underwriting guidelines . . . critical to the investors'

ability to evaluate" RMBS); *id.* ¶ 64 (alleging that the "securitization process . . . shift[ed] the risk of

default . . . to the investors, while obscuring critical information concerning the actual nature of the

risk"); *id.* ¶ 97 (quoting FCIC report:  "'Potential investors were not fully informed or were misled

about the poor quality of the mortgages contained in some mortgage-related securities.'"); *id.* ¶ 344

(summarizing FSOC report:  "[T]he origination and securitization process . . . put investors at a

disadvantage regarding critical information concerning the quality and performance of RMBS.").

Taken as a whole, and in light of the liberal pleading standards applicable under Rules 8 and 12(c),

NCUA's allegations easily satisfy any reliance requirement.  *LeFaro*, 570 F.3d at 475.

In arguing (at 5-6) that NCUA has failed to plead reliance sufficiently, RBS relies solely on

*Shailja Gandhi Revocable Trust v. Sitara Capital Management, LLC*, No. 09-cv-3141, 2011 WL 814647

(N.D. Ill. Feb. 25, 2011).  That case involved plaintiffs who had not alleged that they "actually relied

on [certain] statements (or were induced to act by them)."  *Id.* at *3.  Here, by contrast, NCUA *has*

plausibly alleged that Members United would not have purchased the RMBS at issue but for the

misstatements and omissions in the offering documents.  RBS also quotes (at 5) language from that

decision stating that a plaintiff must make "'detailed allegations regarding . . . acts in reliance on

those [mis]representations.'"  That is misleading: in a footnote (at 6 n.2), RBS concedes that *Shailja*

*Gandhi* involved fraud claims.  Hence, the language that RBS quotes as requiring "detailed"

allegations relate to the heightened pleading requirements of Rule 9(b), which do not apply here.

RBS's refusal to address NCUA's actual allegations and its inability to find a single case in

support of its position under Rule 8 are fatal to its motion.

## III.    In the Alternative, NCUA Should Be Given Leave To Amend

In the alternative, if the Court deems it necessary for NCUA to provide more detail, NCUA

should be given leave to amend its First Amended Complaint.  A party must show "good cause" to

amend its pleadings after the deadline established by a scheduling order.  Fed. R. Civ. P. 16(b)(4); *see*

*also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).  The Second Circuit has

explained that "the primary consideration is whether the moving party can demonstrate diligence,"

but that the district court has "broad discretion concerning the pleadings" and "may consider other

relevant factors including, in particular, whether allowing the amendment of the pleading at this

stage of the litigation will prejudice defendants."  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229,

244-45 (2d Cir. 2007); *see also Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, No. 13-cv-8997

(JPO)(GWG), 2014 WL 6886010, at *4 (S.D.N.Y. Dec. 8, 2014) (noting that the Second Circuit "left

open the possibility that amendments could be permitted even where a plaintiff has not been

diligent in seeking an amendment") (internal quotation marks omitted).  Leave to amend is

appropriate here.  NCUA has been diligent, and RBS will suffer no prejudice from an amendment.

Diligence requires a party to amend its pleadings after being "on notice in advance of the

deadline that [its] complaint was inadequate." *Parker*, 204 F.3d at 340 (collecting cases to define "the

diligence of the moving party").  NCUA had no such notice of any deficiency, let alone one related

to pleading reliance under § 12(G).  To the contrary, NCUA reasonably proceeded throughout this

litigation on the understanding that its original Complaint had put RBS on sufficient notice of its

- 10 -

§ 12(G) claims.  Every Defendant has had two opportunities to move to dismiss NCUA's § 12(G)

claims for failure to plead reliance, but no Defendant – including RBS – advanced such an argument.

Further, NCUA provided a draft of its First Amended Complaint to RBS more than a week before

the scheduling order's deadline for leave to amend.  Nov. 6, 2014 Email from G. Giardina to RBS

counsel (Ex. A).  If RBS had any concerns about whether the draft complaint provided adequate

notice of NCUA's allegations concerning reliance, it could – and should – have raised them then.[6]

Because it did not, NCUA had no reason to believe that Paragraphs 48, 406, and 407 of its

Complaint required additional clarification.  By deciding to wait until the amendment deadline had

passed before raising this argument for the first time in this motion under Rule 12(c), RBS has

caused either unnecessary motions practice or needless delay.

      RBS cannot demonstrate how it would be prejudiced by an amendment, if one is necessary.

If RBS truly intends to assert a defense based on lack of reliance, it has had ample opportunity to

conduct discovery into the evidence supporting NCUA's reliance allegations, and it will continue to

have such an opportunity in the months that remain before fact discovery closes on July 17, 2015.

RBS certainly "cannot claim genuine surprise" at the proposed amendment.  *PNC Bank, Nat'l Ass'n*

*v. Wolters Kluwer Fin. Servs., Inc.*, --- F. Supp. 3d. ---, No. 12-cv-8570 (PAE), 2014 WL 7146357, at *15

(S.D.N.Y. Dec. 15, 2014) (permitting amendment after a scheduling order deadline to correct a

"technical lapse" in pleading).  In all events, RBS should not benefit from its delay in raising an

argument and thus preventing the Court and NCUA from addressing the issue sooner.

## CONCLUSION

      For the foregoing reasons, RBS's motion for judgment on the pleadings should be denied.

---

[6]    Defendants first mentioned reliance under Illinois law to the Courts in a footnote in a
discovery letter dated November 14, 2014 – the same day as the deadline to amend pleadings.  *See*
*NCUA v. Morgan Stanley & Co.*, Nos. 13-cv-6705 et al., ECF 218, at 2 n.3 (Nov. 14, 2014).  Even
then, RBS gave no indication that it considered NCUA's pleadings deficient on this issue.

Dated:  March 6, 2015

/s/ David C. Frederick
David C. Frederick
Wan J. Kim
Gregory G. Rapawy
Andrew C. Shen
KELLOGG, HUBER, HANSEN, TODD,
    EVANS & FIGEL, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel:  (202) 326-7900
Fax:  (202) 326-7999
dfrederick@khhte.com
wkim@khhte.com
grapawy@khhte.com
ashen@khhte.com

George A. Zelcs
KOREIN TILLERY LLC
205 North Michigan Avenue, Suite 1940
Chicago, IL 60601
Tel:  (312) 641-9750
Fax:  (312) 641-9751
gzelcs@koreintillery.com

Stephen M. Tillery
Greg G. Gutzler
Robert L. King
KOREIN TILLERY LLC
505 North Seventh Street, Suite 3600
St. Louis, MO 63101
Tel:  (314) 241-4844
Fax:  (314) 241-3525
stillery@koreintillery.com
ggutzler@koreintillery.com
rking@koreintillery.com

David H. Wollmuth
Frederick R. Kessler
Steven S. Fitzgerald
Ryan A. Kane
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue, 12th Floor
New York, NY 10110
Tel.:  (212) 382-3300
Fax:  (212) 382-0050
dwollmuth@wmd-law.com
fkessler@wmd-law.com
sfitzgerald@wmd-law.com
rkane@wmd-law.com

Norman E. Siegel (D. Kan. # 70354)
Rachel E. Schwartz (D. Kan. # 21782)
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Tel:  (816) 714-7100
Fax:  (816) 714-7101
siegel@stuevesiegel.com
schwartz@stuevesiegel.com

*Attorneys for National Credit Union Administration Board*