IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD, as Liquidating Agent of Southwest Corporate Federal Credit Union and Members United Corporate Federal Credit Union,<br><br>                Plaintiff,<br><br>    v.<br><br>RBS SECURITIES INC., f/k/a GREENWICH CAPITAL MARKETS, INC., and RBS ACCEPTANCE INC., f/k/a GREENWICH CAPITAL ACCEPTANCE, INC.,<br><br>                Defendants. | Case No.:   13-cv-06726 (DLC)<br><br>**ECF Case**<br><br>**Electronically Filed** |

**DEFENDANTS RBS SECURITIES INC.'S AND RBS ACCEPTANCE INC.'S
REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

I.         **INTRODUCTION**

NCUA's Opposition raises three arguments as to why its Section 12(G) claim should not be dismissed with prejudice. None of these arguments holds water.

*First,* labeling RBS's argument "remarkable," NCUA contends that a Section 12(G) plaintiff need not plead or prove reliance. But NCUA's position flies in the face of every Illinois appellate decision to have considered the issue, including one of the cases this Court relied upon in striking Morgan Stanley's loss causation defense to NCUA's Section 12(G) claim. What's more, NCUA's arguments about the "settled law" surrounding Section 17 cases conflate public enforcement actions with private lawsuits. Courts treat these claims differently, and when courts recognized a private right of action under Section 17, they required proof of reliance.

*Second*, NCUA's contention that it pleaded reliance by alleging that Members United was "not aware" of alleged misrepresentations is baseless. To the contrary, lack-of-awareness of a misrepresentation does not plausibly suggest reliance; it suggests the opposite. And if NCUA indeed made these allegations "out of an abundance of caution," it would have at least alleged somewhere in its more than one-hundred page complaint that it "read," "reviewed," or "relied upon" the relevant documents. Tellingly, it did not.

*Third*, NCUA has not shown good cause to amend. RBS was not obligated to apprise NCUA of the elements of its claims. NCUA's failure to allege reliance is a problem entirely of its own making. Indeed, NCUA has known of the cases supporting RBS's argument for at least a year (even citing some of them), but ignored their mandate.

Because NCUA has not alleged reliance as required by Section 12(G), its claims on behalf of Members United should be dismissed.

-1-

## II. ARGUMENT

### A. Reliance Is A Required Element Of A Claim Under Section 12(G) Of The Illinois Securities Law.

NCUA does not dispute that every Illinois appellate court to have considered the issue has held that reliance is a required element of an Illinois Securities Law Section 12(G) claim. Opp'n at 6. Instead, NCUA argues that the purportedly "settled law" governing claims under Section 17(a)(2) of the Securities Act demonstrates that Section 12(G) claims have no reliance element. Opp'n at 1, 4.[1]  NCUA's argument is well off the mark.

The Section 17 cases NCUA relies upon are public enforcement actions. Opp'n at 4 n.3 ("The federal cases cited above as directly interpreting § 17 are enforcement actions by the United States or the SEC . . . ."). But enforcement actions are not an appropriate guide to interpret a civil Section 12(G) claim. As this Court and many others have noted, the government stands on very different footing than a private plaintiff, and need not prove reliance in an enforcement action. *See, e.g.*, *SEC v. KPMG LLP*, 412 F. Supp. 2d 349, 375 (S.D.N.Y. 2006) ("The SEC, unlike a private plaintiff, is not required to prove reliance when it brings enforcement actions under the securities laws."); *SEC v. Credit Bancorp, Ltd.*, 195 F. Supp. 2d 475, 490-91 (S.D.N.Y. 2002) ("The SEC does not need to prove investor reliance, loss causation, or damages in an action under Section 10(b) of the Exchange Act, Rule 10b–5, or Section 17(a) of the Securities Act . . . ." (citations omitted)).

To the extent three Illinois appellate decisions are not sufficient to decide the issue, the appropriate inquiry should be whether reliance is an element in a *private action* under Section

---

[1] NCUA's argument that it need not plead reliance because the text of Section 12(G) "contains no reliance requirement" (Opp'n at 3, 8) is of no moment. Section 10(b) of the Exchange Act and Rule 10b-5 do not contain the word "reliance" either. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. But the case law is well-settled that a private plaintiff in a Section 10(b) case must prove reliance. *See, e.g., Burke v. Jacoby,* 981 F. 2d 1372, 1375 (2d Cir. 1992); *Arco Capital Corp. v. Deutsche Bank,* 986 F. Supp. 2d 296 (S.D.N.Y. 2013).

17(a).  In fact, *Whitlow* (which, according to NCUA, compels reference to federal Section 17 case law) was decided in 1982—when many courts, including the Second Circuit, recognized a private right of action under Section 17(a)(2).[2]  *People v. Whitlow*, 433 N.E.2d 629 (Ill. 1982); *Kirshner v. U.S.*, 603 F.2d 234, 241 (2d Cir. 1978) (recognizing an implied private right of action under Section 17(a)) (*abrogated by Finkel v. The Stratton Corp.*, 962 F.2d 169, 174 (2d Cir. 1992)).[3]  In this regard, at least the Second, Fourth, Seventh, and Ninth Circuits required a private Section 17(a) plaintiff to plead reliance (or acknowledged that such proof was likely necessary).  *See Kramas v. Sec. Gas & Oil Inc.*, 672 F.2d 766, 770 (9th Cir. 1982) ("Cases holding that reliance by particular investors need not be shown in a criminal prosecution or in an action brought by the [SEC] for injunctive relief are inapposite.  Prosecutions and enforcement actions involve interests and procedures different from those involved in private damages suits.  The Government is not 'required to prove that anyone was defrauded or that any investor sustained loss,' but such proof is essential to recovery by a private investor."); *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1280 n.2 (2d Cir. 1973) ("For the purposes of this case, Judge Frankel below considered that the requirements for a private cause of action under § 17(a) were identical to those under Rule 10b-5.  We do likewise."); *Johns Hopkins Univ. v. Hutton*, 488 F.2d 912, 915

---

[2]   There is nothing in *Whitlow* suggesting that the court's instruction to look to cases decided under Section 17 when construing Section 12(G) extended only to public enforcement actions under Section 17.  And, to the extent *Whitlow* can somehow be read in that manner, that is because *Whitlow* itself was a criminal action, making public enforcement actions relevant there in the same way that private rights of action are relevant here.

[3]   *See also Ohman v. Kahn*, 685 F. Supp. 1302, 1310 (S.D.N.Y. 1988) (upholding a private cause of action under Section 17(a) because *Kirshner* "remains the law of the circuit"); *In re Wedtech Corp.*, 85 B.R. 285, 292 (S.D.N.Y. 1988) ("[T]he rule in the Second Circuit is that a private cause of action may lie under that section to purchasers of securities."); *Dannenberg v. Dorison*, 603 F. Supp. 1238, 1241-42 n.5 (S.D.N.Y. 1985) ("The Second Circuit has held that a private right of action for fraud does exist under section 17(a)."); *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 545 F. Supp. 1314, 1354, n.20 (S.D.N.Y. 1982) ("The Second Circuit [] has expressly ruled that a private right of action under Section 17(a) does exist.").

(4th Cir. 1973) (analyzing Sections 10(b) and 17 claims and "assuming that in a case such as this some degree of reliance is necessary"); *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 943 (7th Cir. 1989) (finding that if an implied right of action were available under Section 17(a), "the plaintiffs could not state a claim in this case because 'this section and Rule 10b-5 'track' each other closely, [and] the lack of a 10b-5 cause of action would preclude section 17(a) relief also'" (internal citations omitted)).[4]

NCUA's reading of Section 17 also cannot be reconciled with the three Illinois appellate decisions cited by RBS—*Foster*, *Lucas*, and *Tirapelli*—holding that reliance is an element of a Section 12(G) claim. And NCUA's attempts to distinguish these cases fall flat. As an initial matter, this Court has already reviewed the *Lucas* court's analysis of Section 12(G) and has found that "[t]here is no persuasive data to suggest that *Lucas* was wrongly decided." *NCUA v. Morgan Stanley & Co., et al.*, No. 13-cv-6705, 2014 WL 1673351, at *5 (S.D.N.Y. Apr. 28, 2014). Moreover, NCUA's attempted distinction of *Foster* and *Lucas* rests entirely on its faulty reliance on cases involving public enforcement actions. *See* Opp'n at 6. There is nothing inconsistent about the *Foster* court's acknowledgement that there is no scienter requirement under Section 17(a)(2) in light of *Aaron*, and its holding that reliance is required in a civil action under Section 12(G). *See supra*, n.4.[5] In the end, NCUA fails to cite a single case from any

---

[4] The fact that courts generally no longer permit private actions under Section 17(a) is immaterial. Indeed, following *Aaron v. SEC*, 446 U.S. 680, 701-02 (1980), courts began to disallow private actions under Section 17(a) because the elements of Sections 10(b) and 17 had diverged with respect to whether *scienter* was required. *See, e.g.*, *Finkel*, 962 F.2d at 174-75 ("Our reasoning in *Kirshner* has been fatally undercut by the Supreme Court's decision in *Aaron* . . . ."). *Aaron* said nothing about whether *reliance* was required in private suits under Section 17, and courts interpreting that decision have noted as much. *Kramas*, 672 F.2d at 770 ("[N]othing in *Aaron* suggests a difference between Rule 10b-5 and § 17(a)(2) in respect to the element of reliance.").

[5] NCUA also attempts to distinguish *Lucas* because *Lucas* equated Section 12(G) to federal Section 10(b) and Rule 10b-5, and, according to NCUA, this Court concluded in *Morgan Stanley* that "12(G) claims are not analogous to Rule 10b-5 claims." Opp'n at 7 n.5. This

-4-

court holding that reliance is not required for an Illinois Securities Law Section 12(G) claim. NCUA's arguments should be rejected; it must plead and prove reliance under Section 12(G).

### B. NCUA Has Not Sufficiently Pleaded Reliance.

Although NCUA maintains that it need not plead or prove reliance under Section 12(G), it claims to nonetheless have done so "out of an abundance of caution." Opp'n at 8. It did not.

While federal courts do not analyze pleadings by mere reference to "magic words," NCUA does not dispute that it fails to allege that it "read," "reviewed," or "relied upon" any of the challenged misrepresentations. Instead, NCUA claims to have pleaded reliance by alleging that Members United "w[as] not aware of the untrue statements or omissions of material fact in the Offering Documents of the RMBS," and that if Members United "had known about" alleged disregard of underwriting guidelines, "[it] would not have purchased the certificates." *Id.* (citing Compl. ¶ 48, FAC ¶ 48). This allegation is insufficient, as NCUA's own cases demonstrate.

For example, NCUA cites *Emergent Capital Investment Management, LLC v. Stonepath Group*, 343 F.3d 189 (2d Cir. 2003), for the proposition that reliance "is established simply by showing that, but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction." Opp'n at 8. But NCUA's allegation is hardly one of "but for" causation—being "unaware" of a misrepresentation does not establish that one relied on it. To the contrary, to plead reliance, NCUA must allege that it was actually aware of the representations it challenges. *See, e.g.*, *Arco Capital Corp. v. Deutsche Bank,* 986 F. Supp. 2d 296 (S.D.N.Y. 2013) (granting motion to dismiss Rule 10b–5 claim where plaintiff did not "allege reliance on allegedly deceptive acts of which it was aware") (citations omitted).

---

Court's opinion in *Morgan Stanley*, however, did not analyze whether Section 12(G) includes a reliance element; rather, it analyzed whether certain affirmative defenses were available for a Section 12(G) claim. 2014 WL 1673351, at *5.

Indeed, to the extent *Emergent* is helpful at all, it is to show what sufficient reliance allegations look like. *See Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp.*, 00 Civ. 7723 (RWS), Dkt. No. 27 ¶¶ 14-16, 17 (Sec. Am. Compl.) (S.D.N.Y. Oct. 19, 2001). There, plaintiffs' Second Amended Complaint alleged, among other things, that:

- "Messrs. Yun and Waldron and Panzo and Hansen specifically discussed the representation at page 7 of the document . . . Waldron actually made notes and calculations which he wrote directly on page 7 thereby demonstrating his reliance on the representations contained therein." *Id.* ¶ 14.

- "In believing that NETV had actually invested $14 million in Brightstreet and in purchasing the shares in NETV based in large part on that representation, Waldron (and Yun) relied on (i) the explicit representations and discussions at the January 20th meeting with respect to the investment; (ii) the fact that the representation was made in writing at page 7 in the only "selling" document prepared by defendants in connection with the offering of the NETV shares and the discussion of that page at the meeting of January 20th; and (iii) Waldron's very close personal relationship with Hansen, whom he did not believe would lie to him both orally and in writing about an existing fact." *Id.* ¶ 15.

- "Under the circumstances, plaintiffs' reliance on the oral and written representations that NETV had invested $14 million in Brightstreet was reasonable and justifiable." *Id.* ¶ 16.

- "The statements and omissions were materially misleading for the reasons set forth in paragraphs 13 and 20. The false statements and omissions were relied upon by Emergent." *Id.* ¶ 78.

NCUA's complaint stands in sharp contrast to these allegations. *Hofner v. Glenn Ingram & Co.*, 489 N.E.2d 311, 318 (Ill. App. Ct. 1985) likewise does not stand for NCUA's cited proposition. There, plaintiff based his claim on oral statements that he actually heard, and the court found that plaintiff's claims were not completely devoid of any allegation of detrimental reliance. *Id*. at 317-18. There is no indication from *Hofner* that plaintiff's allegations were anything like NCUA's.[6]

---

[6] NCUA's claim that its allegations in paragraph 48 were intended to plead reliance is further undermined by the fact that similar language appears in the allegations for its Section 11 and 12 claims, which NCUA has maintained do not require proof of reliance. FAC ¶¶ 364, 373 (charging allegations for Section 11 claims) ("At the time Members United purchased the certificate[s], it did not know of the untrue statements and omissions contained in the

-6-

Nor do NCUA's allegations about the purported "importance of misstated and omitted information to decisions made by RMBS investors" bolster its absent reliance allegations. Opp'n at 9. At most, these allegations are directed towards materiality.

Finally, NCUA cannot distinguish *Shailja Gandhi Revocable Trust v. Sitara Capital Management, LLC*, 2011 WL 814647 (N.D. Ill. Feb. 25, 2011). According to NCUA, *Gandhi* is distinguishable because it involved plaintiffs who "had not alleged that they 'actually relied on [certain] statements (or were induced to act by them).'" Opp'n at 9. NCUA claims that, unlike the plaintiffs in *Gandhi*, it has "plausibly alleged that Members United would not have purchased the RMBS at issue but for the misstatements and omissions in the offering documents." *Id.* But, like the plaintiffs in *Gandhi*, NCUA has not alleged that it "actually relied" on the offending statements. NCUA's attempt to distinguish *Gandhi* because it involved fraud claims and the heightened pleading requirements of Rule 9(b) also fails. The problem is not that NCUA has failed to plead "detailed" allegations about Members United's reliance; it is that NCUA has failed to allege any facts about Members United's reliance at all.

### C. NCUA Has Not Demonstrated Good Cause To Amend.

Because NCUA's deadline to amend its pleadings was November 14, 2014, NCUA must show good cause before it is permitted leave to amend. Fed. R. Civ. P. 16(b)(4); *see also* ECF No. 163. As NCUA acknowledges, "good cause" requires the moving party to demonstrate that it was diligent in seeking amendment. *See, e.g.*, *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("[A] finding of 'good cause' depends on the diligence of the moving party."). NCUA does not meet that standard.

---

registration statement[s]."); *id* ¶¶ 384, 396 (charging allegations for Section 12(a)(2) claims) ("At the time Members United purchased the certificates, it did not know of the untrue statements and omissions contained in the prospectuses and/or prospectus supplements.").

As an initial matter, NCUA is incorrect that it had "no reason" to add reliance allegations to its complaint until now. Opp'n at 1. Even *Parker v. Columbia Pictures*, cited by NCUA, rejects the suggestion that a plaintiff may wait until a defendant challenges a claim's sufficiency to seek leave to amend. 204 F.3d at 340-41 (finding that "when [the plaintiff] commenced this action . . . [he] had all the information necessary to support a breach of contract claim, and nothing he learned in discovery or otherwise altered that fact"); *see also Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011) (affirming denial of motion to amend and rejecting plaintiff's argument that "he had no reason to know that his complaint was deficient until the defendants filed their motions to dismiss the complaint"). In fact, RBS was free to raise a failure to state a claim defense as late as trial, or bring a Rule 12(c) motion at any time after the pleadings were closed provided it would not delay trial. Fed. R. Civ. P. 12(c), 12(h)(2). RBS filed its motion only two months after the pleadings were closed, well in advance of trial. RBS even expressly reserved the right to later challenge NCUA's pleadings in the parties' scheduling stipulation regarding the First Amended Complaint. ECF No. 168 ("By consenting to the filing of the amended complaint, RBS does not waive its rights to challenge the sufficiency of NCUA's amended complaint.").

In any case, NCUA has long been on notice of its need to plead and prove reliance; NCUA even cited *Lucas* in its motion to strike Morgan Stanley's affirmative defenses. No. 13-cv-6705, ECF No. 76 (3/18/14 Mot. to Strike Certain Affirmative Defenses) at 4 (citing *Lucas v. Downtown Greenville Investors Ltd. P'ship*, 671 N.E.2d 389 (Ill. App. Ct. 1996)). But rather than allege reliance, NCUA chose instead to stand firm on its erroneous view of the law.[7]

---

[7] It is also disingenuous for NCUA to suggest that RBS "has had ample opportunity to conduct discovery into the evidence supporting NCUA's reliance allegations." Opp'n at 11. In fact, NCUA has resisted efforts to obtain discovery on Members United's reliance on the basis that reliance is not an element of its claims.

## III. CONCLUSION

For the foregoing reasons, and those described in RBS's Opening Brief, NCUA fails to allege—as required under the Illinois Securities Law—that Members United relied on any of the alleged misrepresentations. Accordingly, NCUA's claims under the Illinois Securities Law should be dismissed with prejudice.

Dated:  Los Angeles, California
       March 13, 2015

Respectfully submitted,
KIRKLAND & ELLIS LLP

By: */s/ R. Alexander Pilmer*
R. Alexander Pilmer
David I. Horowitz
Jay L. Bhimani
Kristin E. Rose
Gavin C.P. Campbell

333 South Hope Street
Los Angeles, California 90071
Telephone:  (213) 680-8400
Facsimile:  (213) 680-8500

*Counsel for Defendants RBS Securities Inc. and RBS Acceptance Inc.*