**KIRKLAND & ELLIS LLP**
AND AFFILIATED PARTNERSHIPS

|  |  |  |
|---|---|---|
| R. Alexander Pilmer<br>To Call Writer Directly:<br>(213) 680-8405<br>alex.pilmer@kirkland.com | 333 South Hope Street<br>Los Angeles, California 90071<br><br>(213) 680-8400<br><br>www.kirkland.com | Facsimile:<br>(213) 680-8500 |

March 18, 2015

Re: **RBS's Letter Motion to Compel Damages Discovery**

*NCUA v. RBS Securities Inc.*, No. 13-6726 (S.D.N.Y.)
*NCUA v. RBS Securities Inc.*, No. 11-5887 (C.D. Cal.)
*NCUA v. RBS Securities Inc.*, No. 11-2649 (D. Kan.)

The Honorable Denise L. Cote
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

The Honorable George H. Wu
United States District Court for the
Central District of California
312 North Spring Street
Los Angeles, California 90012-4701

The Honorable John W. Lungstrum
The Honorable James P. O'Hara
United States District Court for the
District of Kansas
500 State Avenue, Suite 517
Kansas City, Kansas 66101

# KIRKLAND & ELLIS LLP

Dear Judges Cote, Wu, Lungstrum, and O'Hara:

We write on behalf of Defendants to seek an order compelling NCUA to provide necessary discovery concerning its claimed damages.

Before this litigation began, 178 of the 187 RMBS certificates at issue in these cases were part of a series of transactions known as the NCUA Guaranteed Notes ("NGN") Program. (Ex. A at 27–29, 41–43, 59–61, 80–82 (NCUA's First. Am. Interrog. Resps.).) NCUA claims to have transferred these certificates to a series of NGN Trusts, and then obtained proceeds from the sale of notes (the "NGN notes") issued by those trusts. (*See, e.g.,* Ex. B at ii, iv-xii, 19 (NGN 2010–R2 Offering Memorandum); Ex. C (NGN 2010–R2 Cross-Receipt Between Seller & Initial Purchasers).)

Any consideration NCUA received in connection with each certificate at issue that was a part of these transactions is directly relevant to NCUA's claimed damages. For instance, under the Illinois Securities Law, damages are reduced by "amounts received by the purchaser for or on account of the disposition of the securities." 815 Ill. Comp. Stat. Ann. 5/13. For NCUA's Securities Act claims, damages are reduced by the sale price (Section 11), or by "any income received" (Section 12(a)(2)) on the security. 15 U.S.C. §§ 77k(e)(2), 77l(a)(2); *Pinter v. Dahl*, 486 U.S. 622, 641 n.18 (1988). Under the California and Kansas statutes, damages are reduced by the security's "value" at disposition. Cal. Corp. Code 25501; Kan. Stat. Ann. 17–12a509(b)(3). Under the Texas statute, damages are reduced by the "greater of" the "value of the security" or "actual consideration received." Tex. Rev. Civ. Stat. Ann. art. 581–33(D)(3).

Given the direct relevance of this information, on October 9, 2014, Defendants served a joint interrogatory asking NCUA to state, for each certificate at issue, "the cumulative income received on each such Certificate, whether that Certificate was sold, the price of sale, the date of sale, the entity from which the sale was made, whether such sale was made through the [NGN Program], and whether any interest in the Certificate was retained or repurchased by NCUA or the Credit Unions . . . ." (Ex. D at Interrog. No. 6 (Defs.' First Joint Interrogs.).) Defendants also served a joint request for production seeking damages-related documents. (Ex. E at RFP No. 19 (Defs.' First Joint RFPs).) And, before these cases were consolidated for discovery purposes, RBS sought these documents for U.S. Central and WesCorp. (Ex. F at RFP Nos. 1, 14, 40; Ex. G at RFP Nos. 1, 15.)

NCUA has refused to provide the sale price, consideration, or value received in these conveyances. (Ex. A at 27–29, 41–43, 59–61, 80–82 (NCUA's First. Am. Interrog. Resps.).) Instead, NCUA references certain documents containing, at best, summary information about the total "net proceeds" received in connection with the sale of certain NGN notes; these documents do *not* identify any price at which each RMBS certificate at issue was conveyed, or the value NCUA received therefrom. (*See, e.g.,* Ex. B at iv-xii (NGN 2010–R2 Offering Memorandum) (300 RMBS certificates underlie the offering, 18 of which are at issue in these actions); Ex. C at 1 (NGN 2010–R2 Cross-Receipt) (setting forth aggregate information about the "net proceeds" NCUA received from the sale of NGN notes, with no breakdown relating to the 18 underlying RMBS certificates at issue).)

In its responses, NCUA cites a Barclays-produced spreadsheet (Barclays served as an underwriter for the NGN Program) and states it "contains information regarding Barclays' pricing of the NGN notes." (*See* Ex. A at 27–29, 41–43, 59–61, 80–82 (NCUA's First. Am. Interrog. Resps.).) If NCUA confirmed that this spreadsheet also contains the amounts that NCUA received for, or on

**KIRKLAND & ELLIS LLP**

account of, NCUA's conveyance of each RMBS certificate at issue in this litigation, the parties would likely have no dispute. But rather than answer Defendants' basic question concerning the relevant figures in this spreadsheet, NCUA has attempted to turn this simple issue into a quid pro quo regarding separate interrogatory responses. (Ex. H at 1 (E-mail from Shen to Bhimani, Mar. 17, 2015).) Thus, Defendants cannot fully assess NCUA's claimed damages.[1]

The Court should order NCUA to provide: (1) any sale or other disposition price for each certificate conveyed as part of the NGN Program; (2) any value or consideration received (if the transaction was not a sale); and (3) if the transaction was not a sale, a description of the transaction. Fed. R. Civ. P. 26(b) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."); S.D.N.Y. Local Rule 33.3(a) (interrogatories may be served concerning "the computation of each category of damage alleged"); *Small v. Nobel Biocare USA, LLC*, 808 F. Supp. 2d 584, 592 (S.D.N.Y. 2011) (ordering production of document bearing on damages calculation); *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (compelling further response to damages interrogatory). To the extent NCUA wishes to rest on the Barclays spreadsheet, it should confirm that the numbers therein do, in fact, represent the consideration or value NCUA received for each RMBS certificate in connection with the NGN Program. If not, NCUA should provide the relevant figures separately.

To be clear, Defendants are not asking NCUA to provide expert analysis regarding its damages calculation. They are requesting basic factual information concerning the proceeds NCUA actually received in connection with these transactions. NCUA has objected to stating the value or consideration received in these transactions, and describing the nature of the transactions, on the grounds that such information is outside the scope of Defendants' interrogatory. (Ex. I at 4 n.4 (Letter from Shen to Bhimani, Feb. 11, 2015).) But Defendants requested that NCUA identify any "income received" on the certificates. (Ex. D at Interrog. No. 6.) Reading Defendants' request to exclude the value or consideration received in a non-sale transaction elevates form over substance. Moreover, NCUA is obligated to provide damages information irrespective of the precise phrasing of the interrogatory. Fed. R. Civ. P. 26(a)(1)(A)(iii) (plaintiff's initial disclosures must contain a damages computation, and the disclosing party must provide the documents on which the computation is based, "including materials bearing on the nature and extent of injuries suffered"); *see also Ritchie Risk–Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 156 (S.D.N.Y. 2012) (Rule 26(a)(1)(A)(iii)'s damages disclosure obligation is "automatic[]"). If the Court does not compel NCUA to provide the information in response to Defendants' interrogatory, it should order NCUA to provide the damages computation required by Rule 26(a)(1)(A)(iii).

---

[1] RBS is also scheduled to appear at a Court-ordered mediation with NCUA in April. Without fundamental damages information from NCUA, it is difficult to perceive how the parties can mediate productively. *Briggs & Stratton Corp. v. Chongqing Rato Power Co.*, 2013 WL 5963151, at *6 (N.D.N.Y. Nov. 7, 2013) ("Delaying damages discovery . . . would . . . deprive the parties of critical information relevant to damages, which could preclude early settlement discussions . . . .").

KIRKLAND & ELLIS LLP

Very truly yours,

*/s/ R. Alexander Pilmer*

R. Alexander Pilmer