UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
NATIONAL CREDIT UNION ADMINISTRATION    :
BOARD, as Liquidating Agent of          :
Southwest Corporate Federal Credit      :
Union and Members United Corporate      :        13cv6726 (DLC)
Federal Credit Union,                   :
                                        :
                       Plaintiff,       :
             -v-                        :
                                        :        OPINION & ORDER
RBS SECURITIES INC., f/k/a Greenwich    :
Capital Markets, Inc., and RBS          :
ACCEPTANCE INC., f/k/a Greenwich Capital:
Acceptance, Inc.,                       :
                                        :
                       Defendants.      :
                                        :
----------------------------------------X

APPEARANCES

For plaintiff:

David C. Fredrick, Wan J. Kim, Gregory G. Rapawy, and Andrew C.
Shen
KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.
Sumner Square, 1615 M Street, N.W., Suite 400
Washington, DC 20036

George A. Zelcs
KOREIN TILLERY LLC
205 North Michigan Avenue, Suite 1940
Chicago, IL 60601

Stephen M. Tillery, Greg G. Gutzler, and Robert L. King
KOREIN TILLERY LLC
505 North Seventh Street, Suite 3600
St. Louis, MO 63101

David H. Wollmuth, Fredrick R. Kessler, Steven S. Fitzgerald,
and Ryan A. Kane
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue, 12th Floor
New York, NY 10110

Norman E. Siegel and Rachel E. Schwartz
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112

For defendants:

R. Alexander Pilmer, David I. Horowitz, Jay L. Bhimani, Kristin
E. Rose, and Gavin C.P. Campbell
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA 90071

DENISE COTE, District Judge

On February 20, 2015, defendants RBS Securities Inc. and
RBS Acceptance Inc. (collectively "RBS") moved pursuant to Fed.
R. Civ. P. 12(c) to dismiss the claims brought under Section
12(G) of the Illinois Securities Law of 1953, 815 Ill. Comp.
Stat. 5/12(G) ("Illinois Blue Sky Law"), by plaintiff National
Credit Union Administration Board ("NCUA") for failure to plead
the element of reliance.  For the following reasons, the motion,
which was fully submitted on March 13, is denied.

BACKGROUND

Before addressing the legal issues raised by the Rule 12(c)
motion, the procedural context of the motion will be described.
This is one of a set of coordinated actions brought by NCUA in
this District, the District of Kansas, and the Central District
of California, as liquidating agent of various credit unions,
against various financial institutions involved in the
packaging, marketing, and sale of residential mortgage backed

securities that the credit unions purchased in the period from 2005 to 2007.  See NCUA v. Morgan Stanley & Co. ("Morgan Stanley"), No. 13cv6705 (DLC), 2014 WL 1673351, at *1 & n.1 (S.D.N.Y. Apr. 28, 2014), reconsideration denied in part, No. 13cv6705 (DLC), 2014 WL 1909499 (S.D.N.Y. May 13, 2014).  NCUA brings this particular action against RBS on behalf of Southwest Corporate Federal Credit Union ("Southwest") and Members United Corporate Federal Credit Union ("Members United"), alleging that the Offering Documents for the relevant securities contained misrepresentations regarding loan originators' compliance with underwriting guidelines and certain quantitative characteristics of the mortgage loan collateral backing the offerings.

The initial complaint, filed on September 23, 2013, asserted claims on behalf of both credit unions under Sections 11 and 12(a)(2) of the Securities Act of 1933, 15 U.S.C. §§ 77k-77l; on behalf of Southwest under the Texas Securities Act, Tex. Rev. Civ. Stat. art. 581, § 33 ("Texas Blue Sky Law"); and on behalf of Members United under the Illinois Blue Sky Law.  The instant motion concerns only the claims brought under Section 12(G) of the Illinois Blue Sky Law.

NCUA's action against Morgan Stanley was designated as the lead case in this District, and defendants in the other actions were to await resolution of Morgan Stanley's motion to dismiss before filing their own.  Morgan Stanley's motion to dismiss did

not call for dismissal of NCUA's claims under Section 12(G) of the Illinois Blue Sky Law for failure to plead reliance.

A January 22, 2014 Opinion on Morgan Stanley's motion to dismiss dismissed NCUA's Securities Act claims as time-barred but permitted the Blue Sky Law claims to go forward.  NCUA v. Morgan Stanley & Co., No. 13cv6705 (DLC), 2014 WL 241739 (S.D.N.Y. Jan. 22, 2014), reconsideration denied, No. 13cv6705 (DLC), 2014 WL 5017822 (S.D.N.Y. Sept. 30, 2014).  A March 17, 2014 Stipulation and Order applied those rulings to the RBS action as well.  Neither RBS nor any defendant in the other coordinated actions moved to dismiss NCUA's claims under Section 12(G) of the Illinois Blue Sky Law for failure to plead reliance.

NCUA was given until November 14, 2014 to amend its pleadings.  Over a week before that deadline, NCUA provided RBS with a "redline version" of the amended complaint that it intended to file and asked that by November 12 RBS indicate the basis of any objections to the amendments so they could be discussed before November 14.  In response to this request, RBS raised no objection to NCUA's Section 12(G) claims; nor did RBS move to dismiss NCUA's First Amended Complaint for failure to plead reliance before answering on December 15, 2014.

RBS filed the instant motion under Rule 12(c) on February 20, 2015, arguing for the first time that NCUA was required to

plead reliance to support its Section 12(G) claims.  No defendant in any of the other coordinated actions has made a similar argument.

DISCUSSION

I.   Legal Standard

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings."

> In deciding a Rule 12(c) motion, [the Court] employ[s]
> the same standard applicable to dismissals pursuant to
> Fed. R. Civ. P. 12(b)(6).  Thus, [the Court] accept[s]
> all factual allegations in the complaint as true and
> draw[s] all reasonable inferences in plaintiff's
> favor.  To survive a Rule 12(c) motion a complaint
> must contain sufficient factual matter, accepted as
> true, to state a claim to relief that is plausible on
> its face.

In re Thelen LLP, 736 F.3d 213, 218-19 (2d Cir.), certified question accepted sub nom. Thelen LLP. v. Seyfarth Shaw LLP, 4 N.E.3d 359 (2013), and certified question answered, 20 N.E.3d 264 (2014) (citation omitted).

II.   Reliance Under Section 12(G) of the Illinois Blue Sky Law

RBS contends that it is entitled to judgment on the pleadings by arguing that NCUA failed to plead reliance, which, according to RBS, is a necessary element of a claim under Illinois Blue Sky Law Section 12(G).  Not so.

In determining whether reliance is an element of a Section 12(G) claim,

> [this Court] of course look[s] to the state's
> decisional law, as well as to its constitution and
> statutes.  Where state law is unsettled, [this Court
> is] obligated to carefully predict how the state's
> highest court would resolve the uncertainty or
> ambiguity.  Where, as here, a state's highest court
> has not spoken on an issue, [this Court] give[s]
> proper regard to the relevant rulings of a state's
> lower courts.  [This Court] may also consider
> decisions in other jurisdictions on the same or
> analogous issues.

Id. at 219 (citation omitted).

Looking first to the text of Section 12(G), it includes no

reliance element:

> It shall be a violation . . . for any person [t]o
> obtain money or property through the sale of
> securities by means of any untrue statement of a
> material fact or any omission to state a material fact
> necessary in order to make the statements made, in the
> light of the circumstances under which they were made,
> not misleading.

815 Ill. Comp. Stat. 5/12(G).

The Illinois Supreme Court, while it has not addressed

whether a claim under Section 12(G) requires proof of reliance,

has noted that Section 12 of the Illinois Blue Sky Law "is

closely analogous to" Section 17 of the Securities Act, 15

U.S.C. § 77q, and has looked to federal judicial interpretations

of Section 17 in construing Section 12.  See People v. Whitlow,

433 N.E.2d 629, 633-34 (Ill. 1982).  Similarly, the definitive

treatise on the Illinois Blue Sky Law explains that Section

12(G) was "based on Section 17 of the . . . Securities Act."

Samuel H. Young, Interpretive Comments and Notes on Sections of

the Securities Law of 1953 as Amended, Ch. 121 1/2, Appendix, at 629 (1960).

Section 12(G) was modeled in particular on Section 17(a)(2), which provides:

> It shall be unlawful for any person in the offer or sale of any securities . . . by the use of any means or instruments of transportation or communication in interstate commerce . . . to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

15 U.S.C. § 77q(a)(2).  Reliance is not an element of a Section 17(a)(2) claim.  See N. Sims Organ & Co. v. SEC, 293 F.2d 78, 80 n.3 (2d Cir. 1961) (agreeing with the Securities and Exchange Commission ("SEC") "that reliance is not an element of the violation charged"); see also United States v. Lewis, 774 F.3d 837, 842 (5th Cir. 2014) (per curiam) ("Specific reliance by the investor . . . need not be shown." (citation omitted)); SEC v. Fife, 311 F.3d 1, 9 (1st Cir. 2002) ("Under [S]ection 17(a) of the Securities Act, specific reliance by the investor need not be shown." (citation omitted)); SEC v. Boock, No. 09cv8261 (DLC), 2011 WL 3792819, at *21 (S.D.N.Y. Aug. 25, 2011) (noting that reliance need not be proved "in an action under . . . Section 17(a)" (citation omitted)); SEC v. Infinity Grp. Co., 993 F. Supp. 324, 327 (E.D. Pa. 1998), aff'd sub nom. U.S. SEC v. Infinity Grp. Co., 212 F.3d 180 (3d Cir. 2000) ("[R]eliance

by investors is not a necessary statutory element under . . .
[S]ection 17 . . . .").

In fact, Section 17(a)(2) is itself materially identical to
Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2),[1]
see Ballay v. Legg Mason Wood Walker, Inc., 925 F.2d 682, 691
(3d Cir. 1991) ("Because the language of [S]ection 17(a)(2) and
of [S]ection 12[(a)](2) is similar, these sections have been
referred to as civil and criminal analogues."),[2] which does not
include a reliance element either, see NECA-IBEW Health &
Welfare Fund v. Goldman Sachs & Co., 693 F.3d 145, 156 (2d Cir.
2012) (noting that reliance is not an element of a Section
12(a)(2) claim). As Morgan Stanley noted, Section 17(a)(2),

---

[1] Pursuant to Section 12(a)(2):

> Any person who offers or sells a security . . . , by
> the use of any means or instruments of transportation
> or communication in interstate commerce or of the
> mails, by means of a prospectus or oral communication,
> which includes an untrue statement of a material fact
> or omits to state a material fact necessary in order
> to make the statements, in the light of the
> circumstances under which they were made, not
> misleading (the purchaser not knowing of such untruth
> or omission), and who shall not sustain the burden of
> proof that he did not know, and in the exercise of
> reasonable care could not have known, of such untruth
> or omission, shall be liable . . . .

15 U.S.C. § 77l(a)(2).

[2] See also NCUA v. Morgan Stanley & Co., No. 13cv6705 (DLC), 2014
WL 1909499, at *1 (S.D.N.Y. May 13, 2014) ("Section 12(G) . . .
is patterned on Section 17(a)(2) of the Securities Act, which is
the criminal analogue to Section 12(a)(2) of the Securities
Act.").

like Section 12(a)(2), "is written as a strict liability offense."  2014 WL 1673351, at *6.  Accordingly, as no reliance element exists under Section 12(a)(2) or Section 17(a)(2) of the Securities Act, one does not exist under Section 12(G) of the Illinois Blue Sky Law either.

The text of Section 12(G) and the analogy to Securities Act Section 17(a)(2), invited by the Illinois Supreme Court, are not the only bases to conclude that reliance is not an element of the instant claim.  As the definitive treatise on the Illinois Blue Sky Law explains, "the Uniform Securities Act has, in the main, similar violation provisions" to those of Section 12. Young, supra, at 629.  Section 101(2) is "the Uniform Act's analog to Securities Act [Section] 17(a)[(2)]," Gustafson v. Alloyd Co., 513 U.S. 561, 603 (1995) (Ginsburg, J., dissenting), and thus to Section 12(G) of the Illinois Blue Sky Law.[3]  And other states' Blue Sky Laws modeled on Section 101(2) of the Uniform Securities Act have been interpreted not to require

---

[3] Pursuant to Section 101(2):

> It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.

Unif. Sec. Act (1956) § 101(2).  What "was Section 101 in the 1956 Act" is now Section 501.  See Unif. Sec. Act (2002) § 501 cmt. 1.

proof of reliance.  See, e.g., Dunn v. Borta, 369 F.3d 421, 433
(4th Cir. 2004) (declining to imply reliance element into
Virginia Blue Sky Law);[4] Carothers v. Rice, 633 F.2d 7, 10, 14
(6th Cir. 1980) (noting parallel between Kentucky Blue Sky Law
and Section 101 of the Uniform Act and explaining that Kentucky
Blue Sky Law does not "require proof of reliance"); Green v.
Green, 293 S.W.3d 493, 505-06, 508 (Tenn. 2009) (noting parallel
between Tennessee Blue Sky Law and Section 101 of the Uniform
Act and holding that the Tennessee Blue Sky Law does not
"require reliance as an element of the right of action"); Gohler
v. Wood, 919 P.2d 561, 566 (Utah 1996) (holding that "reliance
is not an element of a private cause of action under [S]ection[]
61-1-1(2)" of the Utah Blue Sky Law).[5]

III. RBS's Arguments

     To argue against this conclusion, RBS principally relies on
Illinois Appellate Court decisions and an attack on the premise
that Section 17(a)(2) of the Securities Act itself has no
reliance element.  Neither tack is successful.

---

[4] Section 13.1-502(2) of the Virginia Blue Sky Law is materially
identical to Section 101(2) of the Uniform Securities Act.

[5] Section 61-1-1(2) of the Utah Blue Sky Law is materially
identical to Section 101(2) of the Uniform Securities Act.

A.   <u>Illinois Appellate Court Decisions</u>

RBS cites three Illinois Appellate Court decisions that seemingly rule that Section 12(G) requires a showing of reliance.  "Decisions of [a state]'s intermediate appellate courts are helpful indicators of how the [highest court] would decide, but [this Court is] not strictly bound by decisions of the [intermediate a]ppellate [courts], particularly when [there is] persuasive data that the [highest court] would decide otherwise."  <u>Reddington v. Staten Island Univ. Hosp.</u>, 511 F.3d 126, 133 (2d Cir. 2007), <u>certified question accepted</u>, 881 N.E.2d 214 (2008), and <u>certified question answered</u>, 893 N.E.2d 120 (2008) (citation omitted).

Here, there is such persuasive data, in the form of the statutory text, the analogy -- invited by the Illinois Supreme Court itself -- to federal securities law, and the determinations regarding parallel state statutes.  Moreover, all three cases cited by RBS are prone to attack.

In <u>Foster v. Alex</u>, 572 N.E.2d 1242 (Ill. App. Ct. 1991), the appellate court was asked to determine whether a lower court erred in, among other things, instructing the jury that a Section 12(G) claim requires proof of both scienter and reliance.  In holding that Section 12(G) does not require proof of scienter, <u>Foster</u> explicitly "[f]ollow[ed] <u>Whitlow</u>'s lead" in "look[ing] to Federal case law" ruling that Section 17(a)(2)

does not require scienter.  Id. at 1244-45.  In answering the
question whether Section 12(G) requires proof of reliance,
however, Foster, for unknown reason, abandoned Whitlow and the
analogy to Section 17(a)(2), and instead analogized Section
12(G) to a common law cause of action for negligent
misrepresentation, which, in Illinois, does require reliance.
Id. at 1245.  Had Foster persisted in the appropriate analogy to
Section 17(a)(2), it would have held that Section 12(G) requires
neither scienter nor reliance.

In Lucas v. Downtown Greenville Investors Ltd. P'ship, 671
N.E.2d 389 (Ill. App. Ct. 1996), the plaintiffs alleged
violations of, among other provisions, Sections 12(G) and 12(F)
of the Illinois Blue Sky Law.  Much as Section 12(G) is
materially identical to Section 17(a)(2), Section 12(F) is
substantially similar to Section 17(a)(3).[6]  The appellate court
cited Foster for the proposition that it would look to Sections
17(a)(2) and 17(a)(3) of the Securities Act for guidance in
interpreting the subsections of Section 12.  Id. at 395.  But

---

[6] Illinois Blue Sky Law Section 12(F) makes it a violation "[t]o
engage in any transaction, practice or course of business in
connection with the sale or purchase of securities which works
or tends to work a fraud or deceit upon the purchaser or seller
thereof."  815 Ill. Comp. Stat. 5/12(F).  Securities Act Section
17(a)(3) makes it unlawful "to engage in any transaction,
practice, or course of business which operates or would operate
as a fraud or deceit upon the purchaser."  15 U.S.C.
§ 77q(a)(3).

when it stated that Section 12(G) requires a showing of "transaction causation" -- which is effectively the same as reliance -- Lucas looked not to federal cases interpreting Section 17(a)(2) but instead to federal cases holding that a plaintiff must prove both transaction and loss causation to bring an action under Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b).[7]  Lucas, 671 N.E.2d at 398.  While Section 12(F) and Section 17(a)(3) are comparable to Exchange Act Section 10(b), as they all sound in fraud, Section 12(G) and Section 17(a)(2), which are strict liability statutes, are comparable not to Exchange Act Section 10(b) but to Securities Act Section 12(a)(2), which does not require reliance.  Notably, the Lucas plaintiffs did not dispute that they bore a burden to show transaction causation, and the appellate court summarily found that they had "sufficiently met th[at] burden," proceeding to spend the bulk of its analysis on loss causation.  Id. at 398.[8]

---

[7] Exchange Act Section 10(b) makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security . . . [,] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."  15 U.S.C. § 78j(b).

[8] RBS points out that, in Morgan Stanley, this Court said that "[t]here is no persuasive data to suggest that Lucas was wrongly decided."  2014 WL 1673351, at *5.  That statement, however, was made with respect to Lucas's holding regarding loss causation;

Finally, in <u>Tirapelli v. Advanced Equities, Inc.</u>, 813 N.E.2d 1138 (Ill. App. Ct. 2004), the plaintiffs brought Illinois common law fraud claims as well as claims under Sections 12(F), 12(G), and 12(I) of the Illinois Blue Sky Law. Citing <u>Whitlow</u> and <u>Foster</u>, the appellate court said, "[b]ecause [S]ections 12(F), 12(G), and 12(I) of the Illinois Securities Law are modeled after [S]ections 17(a)(1) through (a)(3) of the federal Securities Act, Illinois courts look to federal securities fraud case law in interpreting those [S]ections of the Illinois Securities Law." <u>Id.</u> at 1142 (citation omitted). Thus, said the court, again citing <u>Foster</u>, "reasonable reliance is an element of [S]ections 12(F), 12(G), and 12(I) of the Illinois Securities Law, as well as [S]ection 10(b) of the Securities Exchange Act." <u>Id.</u> (citation omitted). But, while Section 12(F) (modeled on Section 17(a)(3)) and Section 12(I) (modeled on Section 17(a)(1)[9]) sound in fraud and are thus comparable to Exchange Act Section 10(b), Section 12(G) (modeled on Section 17(a)(2)) is a strict liability statute and is

---

<u>Morgan Stanley</u> had no cause to consider <u>Lucas</u>'s discussion of reliance under Section 12(G).

[9] Illinois Blue Sky Law Section 12(I) makes it a violation "[t]o employ any device, scheme or artifice to defraud in connection with the sale or purchase of any security, directly or indirectly." 815 Ill. Comp. Stat. 5/12(I). Securities Act Section 17(a)(1) makes it "unlawful for any person in the offer or sale of any securities . . . to employ any device, scheme, or artifice to defraud." 15 U.S.C. § 77q(a)(1).

comparable to Securities Act Section 12(a)(2), which does not require proof of reliance.

For these reasons, the three intermediate appellate decisions do not reliably indicate that the Illinois's highest court would construe Section 12(G) to include the element of reliance. The persuasive and reliable evidence indicate that it would not.

B.   Reliance Under Section 17(a)(2)

RBS also fights the premise that no proof of reliance is required under Section 17(a)(2) of the Securities Act (and thus under Section 12(G) by analogy). RBS points out that the cases cited above for the proposition that Section 17(a)(2) does not require reliance are public enforcement actions brought by the Government or the SEC. See, e.g., N. Sims Organ, 293 F.2d at 79 (petition to review order of SEC); see also Lewis, 774 F.3d at 839 (appeal from criminal conviction); Fife, 311 F.3d at 7 (SEC action seeking ex parte preliminary injunction). Because the Government and the SEC are not required to prove reliance in a securities fraud action even though a private plaintiff is, see United States v. Vilar, 729 F.3d 62, 88 (2d Cir. 2013), cert. denied, 134 S. Ct. 2684 (2014) ("[W]hile a plaintiff must prove reliance in a private securities fraud suit, there is no such requirement in an SEC enforcement action." (citation omitted)), RBS says that the enforcement actions cited above do not answer

the question whether a private cause of action under Section 17(a)(2) (and thus under Section 12(G)) requires reliance.

RBS goes on to argue that, in the past, when it was thought that Section 17(a) did contain an implied private right of action, some courts, in RBS's words, "required a private Section 17(a) plaintiff to plead reliance (or acknowledged that such proof was likely necessary)."  In support, RBS cites one case from the Courts of Appeals for each of the Second, Fourth, Seventh, and Ninth Circuits.  At most, only the Ninth Circuit case actually held that reliance is an element of a private action under Section 17(a).  See Kramas v. Sec. Gas & Oil Inc., 672 F.2d 766, 770 (9th Cir. 1982).[10]

For instance, Lanza v. Drexel & Co., 479 F.2d 1277 (2d Cir. 1973), did not hold that reliance was an element of any now-extinct private right of action under Section 17(a)(2).  First of all, it was never specified in Lanza which subsection of Section 17(a) was at issue, and, given that the plaintiffs brought claims not only under Section 17(a) but also under Exchange Act Section 10(b), common law fraud, and prima facie tort, it is reasonable to suspect that the subsections of Section 17(a) that sound in fraud -- (a)(1) and (a)(3), but not

---

[10] The Ninth Circuit has subsequently recognized that "there is . . . no implied private cause of action under [S]ection 17(a)," In re Sherman, 491 F.3d 948, 960 (9th Cir. 2007), thus rendering Kramas's holding obsolete.

(a)(2) -- were implicated there.  Id. at 1280.  Plus, with respect to reliance being an element under Section 17(a), the Second Circuit simply said

> For the purposes of this case, Judge Frankel below considered that the requirements for a private cause of action under [Section] 17(a) were identical to those under Rule 10b-5 [promulgated under Exchange Act Section 10(b)].  We do likewise.  The theories of common law fraud and prima facie tort were suggested to the court in a post-trial memorandum.

Id. at 1280 n.2 (citation omitted).  Lanza hardly holds that a Section 17(a)(2) action requires reliance, much less does it cast doubt on using the prevailing interpretations of Section 17(a)(2) to inform construction of Section 12(G).[11]

---

[11] The Fourth Circuit case cited by RBS, Johns Hopkins Univ. v. Hutton, 488 F.2d 912 (4th Cir. 1973), which, like Lanza, was brought under Exchange Act Section 10(b) and an unspecified subsection of Securities Act Section 17(a), also did not hold that reliance was an element under Section 17(a)(2), instead "assuming that in a case such as this some degree of reliance is necessary."  Id. at 915 (emphasis added).  Nor did the Seventh Circuit case cited by RBS, Schlifke v. Seafirst Corp., 866 F.2d 935 (7th Cir. 1989), hold that reliance was an element under Section 17(a)(2).  Indeed, that case noted that "[a] decisive majority of recent authorities have refused to imply a right of action under [S]ection 17(a)," and merely said that "if an implied private right of action were available under [S]ection 17(a), this section and Rule 10b-5 track each other closely."  Id. at 943 (emphasis added).  The claim in that case was not brought specifically under subsection (2) of Securities Act Section 17(a), and the Seventh Circuit's invocation of Rule 10b-5, which -- like its parent, Exchange Act Section 10(b) -- sounds in fraud, implies that the court was likely referring to either subsections (a)(1) or (a)(3) of Section 17, which, unlike (a)(2), also sound in fraud.

These interlocking arguments by RBS also fail to address the fact that there is a private right of action under Section 12(a)(2), which is the civil analog to Section 17(a)(2). As already described, it is well established that reliance is not an element of a Section 12(a)(2) claim. Thus, while RBS may believe it has pointed out a weakness in the analogy to Section 17(a)(2), it has failed to complete the analysis and grapple with each of the relevant provisions of the Securities Act or with any of the other state statutes modeled on the Uniform Securities Act.

CONCLUSION

Because Section 12(G) of the Illinois Blue Sky Law does not require a showing of reliance, it is unnecessary to address the parties' arguments with respect to whether NCUA's First Amended Complaint does, in fact, sufficiently plead reliance, or whether NCUA should be granted leave to amend its First Amended Complaint to add more detailed allegations of reliance. RBS's February 20 motion is denied.

SO ORDERED:

Dated:     New York, New York
           June 15, 2015

                                    _____
                                           DENISE COTE
                              United States District Judge